UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

JASON LOUGHRIE et al.
    Plaintiffs

v.

CORE NATURAL RESOURCES INC.
    Defendant

No. 2:25-cv-4
Judge Thomas Kleeh

**CORE'S RESPONSE TO PLAINTIFFS' MOTION FOR RULEIF UNDER RULE 56(D) AND MOTION TO STRIKE**

Sometimes the facts and law applicable to a case are clear enough at the outset of a case that summary judgment does not need to wait for the parties and the Court to devote time and resources to several months of discovery—and the inevitable discovery-related motions. That is the case here, and that is why Defendant moved for summary judgment shortly after providing Plaintiffs with all the documents necessary to see they do not have a WARN Act claim. Additionally, there is no reason to strike the Carr affidavit that—in conjunction with the submitted exhibits—properly supports Defendant's motion. While this Court may afford Plaintiffs some additional time to review the documents that have been in their possession since August 13, 2025, and the forthcoming responses to their discovery requests, there is no reason to put off summary judgment to permit further discovery, let alone until discovery closes.

As detailed in Defendant's Motion for Summary Judgment, establishing a *prima facie* WARN Act violation is a straightforward math problem…can Plaintiffs establish a sufficient number and percentage of employment losses occurred at Defendant's site to establish that Defendant had an obligation to provide a notice under the WARN Act? Defendant has produced every relevant business record to allow the parties and the Court the opportunity to perform that straightforward math problem. Specifically, Defendant has provided Plaintiffs the detailed employment status of every single employee at the Leer South mine at every point during the relevant time period. Plaintiffs have not identified any specific facts to which they have not had access which would affect the math problem. Perhaps recognizing the numbers obviously do not support their case, Plaintiffs are attempting to instead drag out the inevitable and to force Defendant to engage in time-consuming and costly discovery which does not affect the relevant math problem. Such a fishing expedition is completely unnecessary here, and summary judgment at this stage would be appropriate for such a frivolous case.

### 1. The factual background of Defendant's memorandum provides the statement of uncontroverted facts.

Plaintiffs claim Defendant failed to comply with the local rules because its motion did not include a statement of undisputed material facts. Local Rule 7.02(a) provides that a motion for summary judgment "shall include or be accompanied by a short and plain statement of uncontroverted facts." Unlike

local rules in other jurisdictions, the rule does not detail how a party must format the statement, nor does it require that the statement have a specific heading. *See, e.g.*, S.D. Ind. L.R. 561(a) (requiting brief to include section labeled "Statement of Material Facts Not in Dispute"). Here—consistent with practice in this district—Defendant provided its statement of uncontroverted facts in the section labeled "Factual Background." ECF No. 28, PageID 143–146. And thus, Defendant complied with Local Rule 7.02(a).

### 2. The answers to Plaintiffs' questions are already available or immaterial.

Near the end of their motion, Plaintiffs provide a list of "basic questions" that "have not been answered" and submit that the answers will come out in discovery. ECF No. 35, PageID 258–259 (Pls.' Rule 56(D) Mot.). But each question has either been answered or its answer is immaterial to Defendant's motion for summary judgment. Defendant's responses to those questions follow.

*Question No. 1: "Where did these spreadsheets come from? Who created them? When? Where is the data from?"* ECF No. 35, PageID 259 (Pls.' Rule 56(d) Mot.) (cleaned up). As noted in the Carr affidavit, the documents are Wolf Run (i.e., the relevant employer at the Leer South mine) business records, so they were created by and come from Wolf Run. *See* ECF No. 28-1, PageID 161 (J. Carr Aff.). When they were created does not affect the material facts they provide.

*Question No. 2: "What is the relationship between these corporate entities?"* ECF No. 35, PageID 259 (Pls. Rule 56(d) Mot.). The relationship between Core and Wolf Run has no bearing on the WARN Act inquiry and thus are not material facts for the purposes of Defendant's motion. Plaintiff cannot establish a *prima facie* WARN Act against any employer regarding the Leer South mine, so the identity of the employer does not need to be addressed here.

*Question No. 3: "Is the mine a single site of employment, or are each of its three alleged components a separate site of employment?"* ECF No. 35, PageID 259 (Pls.' Rule 56(d) Mot.). Defendant's motion addresses this. ECF No. 28, PageID 148–150 (Defs.' Mot. Summ. J.). Setting that aside, even if the mine, administrative office, and preparation plant were three separate sites of employment, no site had an employment loss of 33% or more. *Id.*, PageID 154 (no loss at administrative office, loss around 28% at mine, and loss around 8% at preparation plant).

*Question No. 4: "Did the employment actions in January 2025 require notice under WARN?"* ECF No. 35, PageID 259 (Pls.' Rule 56(d) Mot.). Assuming this refers to Plaintiffs' allegation that Defendant terminated "Malcomb and other employees" on January 14, 2025, Defendant has clarified that Loughrie was terminated on—and that all reduction in force terminations occurred on—February 21, 2025. ECF No. 1, PageID 3 (Compl.); *see also* ECF No. 28-1, PageID 165–166 (J. Carr Aff.). There were no January 2025

4

employment losses, and there is no reason for notice when there are no losses. That is not a bald allegation by Defendant; rather, it is supported by the uncontroverted facts now of record.

*Question No. 5: "Do the sequence of terminations in early 2025 amount to separate and distinct employment actions?"* ECF No. 35, PageID 259 (Pls. Rule 56(d) Mot.). Assuming this refers to Plaintiffs' allegations that Defendant terminated "Malcomb and other employees" on January 14, 2025, and then terminated additional employees on February 21, 2025, Defendant has clarified that all reduction in force terminations occurred on February 21, 2025, and there were no employment losses on January 14, 2025. ECF No. 1, PageID 3 (Compl.); *see also* ECF No. 28-1, PageID 165 (J. Carr Aff.). Once again, that is not a bald allegation by Defendant; rather, it is supported by the uncontroverted facts of record.

*Question No. 6: "Were the workers who were put on low earnings status reducing their hours?"* ECF No. 35, PageID 259 (Pls.' Rule 56(d) Mot.) (cleaned up). Even if hours were reduced, none of those workers remained on "low earnings" status for a six-month period. *See* ECF No. 28-1, PageID 166 (Carr Aff.) (explaining employees were only on "low earnings" status "from January 25, 2025 through February 21, 2025" (i.e., 27 days); *see also* 29 U.S.C. § 2101(a)(6) (including "reduction in hours of work of more than 50 percent during each month of any 6-month period" in definition of "employment loss").

*Question No. 7: "Did the executives of Core discuss potential compliance with the WARN Act and what did they say?"* ECF No. 35, PageID 259 (Pls. Rule 56(d) Mot.). Because WARN Act liability here turns on whether sufficient employment losses occurred, any evidence of discussions about WARN Act compliance would not be material facts. Simply put, discovery in this vein would not lead to facts essential to justify Plaintiffs' opposition to summary judgment.

*Question No. 8: "Did the executives of Core exhibit subjective intent to comply with the Act, as necessary to invoke the good faith defense?"* ECF No. 35, PageID 259 (Pls. Rule 56(d) Mot.). This is irrelevant for two reasons: (1) the WARN Act's good faith provision comes into play only if there is a WARN Act violation *and* (2) the provision only reduces liability (i.e., damages) and is not a complete defense. 29 U.S.C. § 2104(a)(4). Because Defendant's motion asserts there was no WARN Act violation, facts relating to the good faith provision would not justify Plaintiffs' opposition to summary judgment. Defendant merely asserted at the pleadings stage "good faith" as an alternative defense in the unlikely event that Plaintiffs somehow prevailed on liability. Defendant's belief that it was not in violation of WARN consistent with the arguments it advances on the merits would certainly be a damages defense. But that defense is not before the Court.

Suffice it to say, although Plaintiffs raise eight questions that they want answered before this Court entertains Defendant's motion for summary judgment, Plaintiffs either already have the answers or the answers will not help them stave off summary judgment.

### 3. The identity of the proper defendant is not material because it does not change whether a sufficient number of employment losses occurred.

Plaintiffs assert that Defendant creates a genuine dispute of material fact by advising that Core is not the proper defendant. A fact is material only if it "might affect the outcome of the suit under the governing law," and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Whether Core or Wolf Run is the proper defendant does not change whether there were enough employment losses at Leer South to trigger WARN Act liability. As a result, the identity of the proper defendant ends up being immaterial to this motion, as pointed out in the first footnote of Defendant's motion. *See* ECF No. 28, PageID 140 n.1 (Defs.' Mot. Summ. J.) ("Whether Core is the defendant or Wolf Run is the defendant, the outcome remains the same for purposes of this motion.").

### 4. The complaint makes it clear that this is a "mass layoff" case, not a "plant closing" case.

In passing, Plaintiffs invoke an alternative "plant closing" theory of liability—as opposed to the "mass layoff" theory—suggesting that their WARN Act claims can proceed under that theory despite Defendant's motion. ECF No.

7

35, PageID 257 (Pls. Rule 56(d) Mot.). The "plant closing" claim requires a plaintiff to show that there was a "permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment" and that the shutdown resulted in sufficient employment losses. 29 U.S.C. § 2101(a)(2). On the other hand, a "mass layoff" claim requires proof that 33% of employees and at least 50 employees *or* proof that at least 500 employees experienced an employment loss. 29 U.S.C. § 2101(a)(3).

Although the phrase "plant closing" pops up a few times in the complaint, Plaintiffs' complaint alleges only a "mass layoff" claim. The complaint focuses on the 33% and 50 employee requirement:

> 3. Within 90 days of January 14, 2025, upon information and belief, Defendant abruptly terminated several groups of employees, unilaterally and without proper notice to employees or staff, terminating over 50 employees and at least 33% of active full-time employees, including Plaintiff, at the Facility.
>
> ...
>
> 20. Defendant did not provide any WARN Act Notice as required by 29 U.S.C. §§ 2101 *et seq.* even though it planned to abolish, terminate, and/or layoff at least 50 employees and 33% of the employees employed there.
>
> ...
>
> 32. The January 13, 2025, terminations at the Facility, resulted in "employment losses" as defined in 29 U.S.C. § 2101(a)(3)(B)(i)(I) and (II) for at least 33 percent of the employees and at least 50 employees. The ongoing terminations occurring within any 90-day period, including those occurring on February 21, 2025, may be aggregated. 29 U.S.C. § 2102(d).

ECF No. 1, PageID 1, 3, 6 (Compl.). And while it mentions that there was a "mass lay off or plant closing" or a "plant closing or mass layoff" or "plant closing and/or mass layoff," it never alleges that a plant closing occurred. ECF No. 1, PageID 2, 6–7 (Compl.). Nor are there any allegations concerning a causal link between a plant closing and any employment losses. Nor would additional discovery reveal a plant closing claim, as Defendant already provided all the information Plaintiffs would need to establish such a claim. Simply put, Plaintiffs never really made this a "plant closing" case. And they cannot.

### 5. While the motion was filed early, it is not premature.

Plaintiffs believe that the timing of Defendant's motion is unusual. Although the motion was filed early in this case, the circumstances make summary judgment appropriate at this point.

To start, early summary judgment motions are not only permissible but in cases like this one, prevent the needless commitment of resources. Rule 56 does not provide a date on which a party may first file for summary judgment; rather, it provides that absent a local rule or court order saying otherwise, "a party may file a motion for summary judgment <u>at any time</u> until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b) (Emphasis added). And summary judgment's principal purpose "is to save time and resources of both litigants and the Court by allowing judgment on the law where no genuine

issue of fact exists for a jury." *Dotson v. Joseph*, 2006 WL 213712, at *4 (W.D. Va. 2006). To that end—and consistent with the initial disclosure requirement's stated "purpose of reducing cost and time spent toward a case's resolution," Defendant's initial disclosures provided Plaintiffs with all of the employee information necessary to determine the viability of the WARN Act claim. E. Old, *Give It to Me Uniformly: West Virginia Wants Initial Disclosure*, 115 W. Va. L. Rev. 363, 367 (2012); *see also* ECF No. 34-1 (Aug. 13 Email re Initial Disclosures).

On top of that, like many claims under West Virginia's Wage Payment and Collection Act, WARN Act claims may be amenable to early summary judgment in either direction because liability is easy to determine based on readily available information. Before West Virginia added a "safe harbor" to the Wage Payment and Collection Act in 2015, an errant employer could be quickly adjudicated liable for a failure "to pay wages and fringe benefits upon the employee's separation." J. Harrison et al., *Safe Harbor Provision of the West Virginia Wage Payment and Collection Act* (Mar. 27, 2020), *available at* https://bit.ly/3Vb4l5C. To that point, a former employee could obtain summary judgment on liability by simply providing an affidavit and a copy of their bank statement to show payment had not been made. Here, too, liability can be easily proven or disproven. As illustrated by Defendant's motion, WARN Act liability turns on an equation using readily available employee data. Since the

facts needed to determine liability can be produced early with initial disclosures—as was the case here—an early motion for summary judgment is not as unusual as Plaintiffs profess to believe.

### 6. There is no reason to strike the Carr affidavit.

Plaintiffs also ask this Court to strike the Carr affidavit. But their reasons do not justify their request.

They first claim that this Court should strike the affidavit because courts "routinely deny motions for summary judgment when a statement of undisputed material facts is absent or does not comply with the local rules." ECF No. 35, PageID 260 (Pls.' Rule 56(d) Mot.). There are two problems with this argument. First, Plaintiffs do not explain how striking an affidavit is similar to denying a motion, so the cited authorities are not helpful. Second, Plaintiffs do not identify the local rule the affidavit violates, which was the reason for denying the motion in the cited authorities. *See, e.g.*, *Griffin v. Bank of Am.*, 971 F. Supp. 492, 495 (D. Kan. 1997) (denying motion because it "does not comply with local requirements"). In any event, striking is not the solution here, as "the proper way for a party to register its objections to an opposing party's motions, memoranda, or affidavits is through the briefs or memoranda the party submits to the court." *Weber v. Specialized Loan Serv. LLC*, 341 F.R.D. 214, 216 (E.D.N.C. 2022) (cleaned up).

11

They also claim the affidavit was incomplete because it was initially submitted without its attachments. As explained in the August 25 letter, the motion did not rely on two of the attachments and the "remaining attachments were filed as separate exhibits." ECF No. 34-2, PageID 232. Defendant was trying not to bog down the Clerk's office with exhibits adding nothing to the motion. Alas, if Plaintiffs demand that those attachments be added to the docket as exhibits, Defendant can file supplemental exhibits. Any delay in filing supplemental exhibits would be harmless since Plaintiffs have had those exhibits since August 13, 2025, and received additional copies along with the August 25 letter. *See* ECF No. 34-1 (Aug. 13 Email re Initial Disclosures); ECF No. 34-2 (Aug. 25 Letter re Affidavit Attachments).

### 7. The Carr affidavit is not the only basis for summary judgment.

Plaintiffs claim that the "sole basis" for Defendant's motion was the Carr affidavit. ECF No. 35, PageID 253 (Pl. Rule 56(d) Mot.). But that is not true. In addition to the Carr affidavit, Defendant submitted multiple spreadsheets is support of its motion. In addition to providing other employee information, those spreadsheets show the number of employees employed at Leer South in December 2024 (when notice would have been required if necessary) and the number of employment losses in February 2025. *See* ECF No. 28-2 (Feb. 2025 Final Determination Spreadsheet); ECF No. 28-3 (Employee List (Dec. 23, 2024)). With respect to those numbers, Carr's affidavit simply summarized the

12

evidence and the material facts. Under Rule 1006 of the Federal Rules of Evidence, "[t]he court may admit as evidence a summary, chart, or calculation offered to prove the content of voluminous admissible writings . . . that cannot be conveniently examined in court, whether or not they have been introduced into evidence." The Rule requires that the proponent (Defendant) "must make the underlying originals or duplicates available for examination or copying . . . ." Defendant provided the underlying documents to Plaintiff in August.

8. **Plaintiffs have had ample time to assess their claims because they had had the summary judgment exhibits and affidavit attachments since August 13.**

From Plaintiffs' motion, it is not clear whether they know that the Carr affidavit attachments are the same documents they had already received as initial disclosures. To dispel any confusion, here is a summary of the material facts established by the summary judgment exhibits and the Carr affidavit attachments, when those documents were provided to Plaintiffs, and whether any of those documents are identical:

- **February 2025 Final Determination Spreadsheet**. *See* ECF No. 28-2. This spreadsheet identifies the Leer South employees along with "whether they were retained or not and whether they worked at the mine, administrative building, or preparation plant. *See* ECF No. 34-1, PageID 230 (Aug. 13 Email re Initial Disclosures). Plaintiffs received this document on August 13, 2025. *Id.*

- **Employee List (Dec. 23, 2024).** *See* ECF No. 28-3. This is also Attachment B to the Carr

    affidavit. *See* ECF No. 28-1, PageID 166 (Carr Aff.). This spreadsheet identifies all Leer South employees as of December 23, 2024, and whether they worked at the mine, administrative building, or preparation plant, among other things. *See* ECF No. 34-1, PageID 230 (Aug. 13 Email re Initial Disclosures). Plaintiffs received this document on August 13, 2025. *Id.*

- **Terminations Spreadsheet.** *See* ECF No. 28-4. This spreadsheet identifies additional Leer South employees terminated before February 2025, the reason for termination, and whether they worked at the mine, administrative building, or preparation plant, among other things.. *See* ECF No. 34-1, PageID 230 (Aug. 13 Email re Initial Disclosures). Plaintiffs received this document on August 13, 2025. *Id.*

- **Employee List (Nov. 28, 2024).** *See* ECF No. 28-5. This is also Attachment A to the Carr affidavit. *See* ECF No. 28-1, PageID 166 (Carr Aff.). This spreadsheet identifies all Leer South employees as of November 28, 2024, and whether they worked at the mine, administrative office, or preparation plant, among other things. *See* ECF No. 34-1, PageID 230 (Aug. 13, Email re Initial Disclosure). Plaintiffs received this document on August 13, 2025. *Id.*

- **Payroll Data.** This is Attachment C to the Carr affidavit. ECF No. 28-1, PageID 166 (Carr Aff.). This document provides payroll data for each Leer South employee. *See* ECF No. 34-1, PageID 230 (Aug. 13 Email re Initial Disclosure). Plaintiffs received this document on August 13, 2025. *Id.*

- **Low Earnings Reports.** This is Attachment D to the Carr affidavit. ECF No. 28-1, PageID 166 (Carr Aff.). This document identifies Leer South employees "who received assistance from Work Force West Virginia while remaining employed

by Wolf Run from January 25, 2025 through February 21, 2025." *Id.*

In addition to all these documents, Plaintiffs also received other spreadsheets with data about Leer South employees. *See* ECF No. 34-1, PageID 230–231. Defendant did not include Payroll Data, Low Earnings Report, or any of the other documents provided with its initial disclosures simply because the information in the exhibits submitted was sufficient to justify summary judgment in Defendant's favor. Including additional exhibits would simply bloat the docket with unnecessary or duplicative documents. Moreover, Defendant complied with Rule 1006.

## CONCLUSION

Unlike the proverbial good deed, Defendant's effort to promote efficient litigation should not be punished. Plaintiffs pleaded a "mass layoff" claim under the WARN Act without the math being on their side. They did not know or plead the total number of employees at Leer South, nor did they know the number of employment losses that occurred in February 2025. In their initial disclosures and the Carr affidavit, Defendant did the homework and then showed its work. Defendant provided ample Leer South employee information to show the number of employees at Leer South in December 2024 and the number of employment losses in February 2025 *and* an affidavit adding up all those numbers. Rather than spending months and many dollars on discovery,

15

Defendant filed an early—yet fully supported—motion for summary judgment. This Court should allow summary judgment briefing to proceed. And, then, it should award summary judgment to Defendant, ending this matter without permitting prolonged litigation for the sake of prolonging litigation.

BY COUNSEL

|  |  |
|---|---|
| STEPTOE & JOHNSON PLLC | */s/ Dallas F. Kratzer III*<br>Dallas F. Kratzer III (12350)<br>41 S. High St., Suite 2200<br>Columbus, OH 43215<br>614.458.9827<br>dallas.kratzer@steptoe-johnson.com<br><br>Michael J. Moore (12009)<br>400 White Oaks Blvd.<br>Bridgeport, WV 26330<br>304.933.8000<br>michael.moore@steptoe-johnson.com<br><br>Bryan R. Cokeley (774)<br>707 Virginia St. East, 17th Floor<br>Charleston, WV 25301<br>304.353.8116<br>bryan.cokeley@steptoe-johnson.com |