IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

| | |
|---|---|
| JASON LOUGHRIE; CALEB MALCOLM, individually and on behalf of those similarly situated,<br><br>**Plaintiffs**,<br><br>v.<br><br>**CORE NATURAL RESORUCES, INC.,**<br><br>**Defendant.** | **CIVIL ACTION NO.: 2:25-CV-4 (JUDGE KLEEH)** |

### ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL [ECF NO. 52]

Presently pending before the Court is a motion to compel discovery [ECF No. 52] filed by Plaintiffs on November 5, 2025. The Court also is in receipt of Defendant's response in opposition [ECF No. 63] filed on November 19, 2025, and Plaintiffs' reply [ECF No. 64] filed on November 25, 2025. By Referral Order [ECF No. 52] entered on November 5, 2025, the Hon. Thomas S. Kleeh, Chief United States District Judge, referred the motion [ECF No. 52] to the undersigned United States Magistrate Judge for hearing and disposition. On December 3, 2025, the undersigned convened a Motion Hearing, by videoconference, at which appeared counsel for the respective parties.

After a thorough review of the motion, response, and reply, and of the record herein and pertinent legal authority, and after having received the arguments of counsel at the Motion Hearing, the Court hereby **GRANTS** Plaintiffs' motion as more fully set forth herein.

1

## I. BACKGROUND AND FACTUAL ALLEGATIONS

Plaintiffs are members of a putative class of persons who are (or were) Defendant's employees. By their Class Action Complaint [ECF No. 1], Plaintiffs allege certain violations of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101-2109 (the "WARN Act"). Plaintiffs allege that Defendant operated a coal mine located in Barbour County, in the Northern District of West Virginia, and that in early 2025, Defendant terminated members of the putative class from its employment. In so doing, Plaintiffs allege, Defendant did not timely provide the notice required under the WARN Act for those terminations of employment. Plaintiffs seek, *inter alia*, a declaration that Defendant violated the WARN Act, back pay, monies for lost benefits, an assessment of civil penalties, and their attorney fees and costs.

Generally put, Defendant challenges the WARN Act claims by arguing that the circumstances of the employee terminations did not trigger the WARN Act's requirements for providing notice to its employees.[1] Defendant argues that (1) it is not the entity that operated the mine in question, (2) simple math demonstrates that the number of terminations did not qualify as a "mass layoff" under the WARN Act, and (3) the terminations did not constitute a "plant closure" under the WARN Act.

## II. SUMMARY OF DISCOVERY DISPUTE

As for the discovery dispute at hand, Plaintiffs seek information about how the terminations of those in the putative class occurred. They argue that WARN Act claims are fact-intensive, and as such, they seek for example, particulars about how and why the terminations were effectuated;

---

[1] Indeed, Defendant's argument in this regard has given rise to its early filing of a motion for summary judgment [ECF No. 28] and Plaintiffs' motion [ECF No. 34] under Rule 56(d) to challenge that motion as inappropriately filed at this time, given the discovery issues raised here. Plaintiff's motion [ECF No. 34] is the subject of a corresponding Report and Recommendation, which the undersigned enters concurrently herewith. Given the commonality of issues raised in the two referred matters, portions of the instant Order and the corresponding Report and Recommendation are identical.

details about whose employment was terminated and when; information about persons with knowledge about the decision to terminate employees' employment; the specifics of which employees were terminated outright, which were transferred, which were put on low earnings status, and the like; and information about continuing operations at the mine in question.

Defendant resists providing the information sought. Defendant says that it has provided extensive spreadsheets and other payroll records which contain all pertinent information which Plaintiffs may need at this stage of the litigation. Defendant also argues that the information it has provided demonstrates that there was no WARN Act violation, and as such, requiring it to produce further discovery is unwarranted.

### III. ANALYSIS

The overarching provision which governs the scope of discovery under the Federal Rules of Civil Procedure is that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.

Fed. R. Civ. P. 26(b)(1). And information need not be admissible to be discoverable. Id. In this context, as the Fourth Circuit has instructed:

> All civil discovery, whether sought from parties or nonparties, is limited in scope by Rule 26(b)(1) in two fundamental ways. First, the matter sought must be "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance is not, on its own, a high bar. There may be a mountain of documents and emails that are relevant in some way to the parties' dispute, even though much of it is uninteresting or cumulative. Rule 26 therefore imposes another requirement: discovery must also be "proportional to the needs of the case." Id. Proportionality requires courts to consider, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. This relieves parties from the burden of taking unreasonable steps to ferret out every relevant document.

3

Virginia Dep't of Corr. v. Jordan, 921 F.3d 180, 188–89 (4th Cir. 2019). In any event, "A district court has wide latitude in controlling discovery and ... its rulings will not be overturned absent a showing of clear abuse of discretion." Rowland v. Am. Gen. Fin., Inc., 340 F.3d 187, 195 (4th Cir. 2003) (citations and quotations omitted).

At the Motion Hearing, Defendant's counsel helpfully explained that the coal mine complex at issue is the Leer South complex. Per defense counsel, that complex consists of an underground mine, a preparation plant, and an administrative office. In February of 2025, there were 161 terminations from Leer South, the majority being underground miners; a few others worked at the preparation plant. There were some 614 workers at Leer South. Defendant's argument is that the 161 terminations do not constitute 33 percent of the workforce that existed at that time. As the terminations did not constitute such a percentage of the workforce, the argument goes, the was no triggering of the WARN Act. Defendant also argues that the terminations did not qualify as a "plant closure" which would trigger the WARN Act. At the Motion Hearing, Defendant's counsel also stated that Defendant itself does not operate Leer South.

However, the undersigned concludes that Plaintiffs should be permitted to pursue certain discovery to better understand the materials which Defendants have provided. Understandably, Plaintiffs do not take, at face value, Defendant's assertion that the information it has provided shows that Plaintiffs have no case. Plaintiffs wish to probe that information further.

At the Motion Hearing, Plaintiffs' counsel explained that there was a fire at the underground mine shortly before the terminations. As a result of that fire, counsel stated, approximately 200 employees were transferred from Leer South or were put on reduced earnings status. It is unclear from Plaintiffs' review of Defendant's records what happened between the time of the fire and the time of the terminations, and what happened with certain groups of employees

4

as a result. Plaintiffs convincingly pointed out that the terminations in question resulted in considerable movement among employees/former employees. Plaintiffs wish to better understand, for example, which employees were outright terminated, which were transferred to other mines, and which were placed on low earnings status. Low earnings status can trigger the WARN Act, and Plaintiffs argue that it is not clear from the materials Defendant provided how many employees were put on low earnings status. And obtaining the information they seek would help Plaintiffs determine if there was a "plant closing" under the WARN Act, to which the percentage-of-workforce calculation would not apply. And on the issue of operation and ownership of Leer South, Plaintiffs' counsel stated at the Motion Hearing that a deposition of an appropriate corporate representative could clear up that question.

In the end, the undersigned concludes that Plaintiffs reasonably want responses to their written discovery requests and the opportunity to depose an appropriate corporate representative. Certainly, the information sought bears directly on the viability of a WARN Act claim, per Rule 26(b)(1) cited above. And under the pertinent test under Rule 26, there appears to be no implication of privileged material, and the requests can be refined or limited to be proportional to Plaintiffs' needs. Moreover, Defendant has access to the information sought, and apparently can provide it without undue expense or delay. Plus, the importance of the discovery is evident insofar as it should speak directly to the very viability of Plaintiffs' WARN Act claim.

As an aside, one argument which Defendant raises is that, in making their motion to compel, Plaintiffs did not enumerate all of the discovery requests/responses in dispute, contrary to the Local Rules. Defendant would have the Court deny the motion on that ground. However, Plaintiffs convincingly argue that they clearly state <u>all</u> responses are defective, and in their motion, they speak to only certain individual discovery requests/responses to illustrate the nature of the

dispute. Plaintiffs also point out that, with their motion, they provided the <u>entirety</u> of the discovery requests and responses at issue, thus showing that they take issue with <u>all</u> of Defendant's responses. In review of Plaintiffs' motion, and upon hearing the positions of counsel at the Motion Hearing, it is clear to the undersigned that Plaintiffs indeed take issue with responses they have received as to all discovery requests. Thus, while Defendant's argument on this point is well-taken, it does not carry the day.

At bottom, then, the undersigned concludes that the information Plaintiffs seek is both relevant to the claims herein, and proportional to the needs of the case, per the applicable rules of discovery and interpretive caselaw.

Plaintiffs may obtain the responses which they seek to their discovery requests, with some limitations, and may be permitted to depose an appropriate corporate representative of Defendant. As discussed during the Motion Hearing, Plaintiffs will be permitted to obtain the discovery sought only as to Leer South, insofar as they must narrow the scope to information about employees of Defendant (or its subsidiaries) in Barbour County and Taylor County, West Virginia. While Plaintiffs may obtain information about transfer to other mines, they may not otherwise seek information pertaining to other mine complexes.

Additionally, as discussed during the Motion Hearing, Plaintiffs also may take a deposition of an appropriate corporate representative of Defendant, concerning the materials Defendant previously produced and will produce as a result of this Order. In fact, subsequent information provided to the undersigned is that the parties have agreed on a date for this deposition. The deposition is scheduled for December 19, 2025, and will be of Joshua Carr, a human resources staffer of Defendant. And as discussed during the Motion Hearing, Plaintiffs' deposition of this

corporate representative does not foreclose a subsequent deposition of that person regarding damages and other such issues, if the case continues to later phases.

### III. CONCLUSION

Accordingly, for the reasons set forth herein, it is **ORDERED** that Plaintiffs' motion to compel [ECF No. 52] is hereby **GRANTED** to the extent which Plaintiffs seek information consistent with this Order. Specifically, it is **ORDERED** that Plaintiffs may seek the discovery sought insofar as it is not privileged or confidential and limited to individuals which Defendant and/or its subsidiaries employed within the locale of Barbour County and Taylor County, West Virginia. It is further **ORDERED** that Defendant shall provide the information sought, forthwith, and in any event, prior to the deposition of Defendant's corporate representative. The information shall be provided sufficiently in advance of the deposition to allow for a meaningful review of it by Plaintiffs' counsel. Finally, Defendant shall make available for deposition an appropriate corporate representative who can speak to the information which Defendant previously has provided to Plaintiffs and will be providing pursuant to this Order. And as noted during the Motion Hearing, Plaintiffs' taking of such a deposition does not preclude them from taking further deposition of a corporate representative concerning other issues, should this matter proceed to later stages of litigation.

It is all so **ORDERED**.

The Clerk of the Court is **DIRECTED** to provide a copy of this Order to any parties who appear *pro se* and all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: December 11, 2025.**

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE